Filed 9/15/22  In re H.B. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re H.B., a Person Coming Under the Juvenile Court Law. | B315523 |
| | (Los Angeles County Super. Ct. No. DK14595A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| LAMONT B., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Steff R. Padilla, Juvenile Court Referee. Conditionally affirmed with directions.

Johanna R. Shargel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Acting County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen Watson, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

**INTRODUCTION**

Lamont B. appeals from the juvenile court's order under Welfare and Institutions Code section 366.26 terminating his parental rights to H.B.[1]  He argues that the Los Angeles County Department of Children and Family Services did not comply with the requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law and that the juvenile court erred in ruling ICWA did not apply.

We conclude that, because the juvenile court failed to ensure the Department fulfilled its duty of inquiry under section 224.2, substantial evidence did not support the court's finding ICWA did not apply.  Therefore, we conditionally affirm the court's order terminating Lamont's parental rights and direct the juvenile court to ensure the Department complies with ICWA and section 224.2, and, if necessary, the notice provisions under ICWA and related California law.

———————————

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

A.  *The Dependency Proceedings*

On December 14, 2015 the Department filed a petition under section 300, subdivision (b)(1), alleging, among other things, that Lamont created a detrimental and dangerous home environment for his three-month-old daughter H.B. and that Terryan, H.B.'s mother (who is not a party in this appeal), failed to protect H.B. by allowing H.B. to reside there. Specifically, the Department alleged police searched Lamont's home several days earlier and found ammunition in the home and cocaine next to H.B.'s baby formula. The Department's investigation revealed Lamont had a history of illicit drug use, was a registered controlled substance offender,[2] and had a history of drug-related convictions. A few weeks later, Lamont was arrested.

At the December 14, 2015 detention hearing the juvenile court detained H.B., removed her from Lamont and Terryan, and made a prima facie finding H.B. was a person described by section 300, subdivision (b)(1). The court ordered that Lamont could not visit H.B. without first contacting the Department. The court later ordered that Lamont could have two monitored visits per week, each for two hours, after his release from custody.

In March 2016 the juvenile court sustained an amended petition and declared H.B. a dependent child of the court under section 300.[3] The court found that there was a substantial danger to H.B.'s physical health if she were returned to Lamont's

---

[2]     The Legislature repealed Health & Safety Code sections 11590-11594, which concerned registered controlled substance offenders, in 2019.

[3]     The Department amended its petition to add allegations regarding Terryan.

home, that the Department provided reasonable services to prevent removal, and that there were no reasonable means to protect the child without removal. In April 2016 the court removed H.B. from Lamont, ordered the Department to provide Lamont reunification services, and ordered Lamont to submit to weekly drug testing, attend parenting classes, and receive individual counseling.

For the six-month review hearing the Department reported that H.B. was "smiling and making good eye contact" with the Department social worker and was "dressed weather appropriately" and that the foster mother, Ms. L., indicated H.B. was current with her immunizations and medical examinations. The Department also reported that a social worker met with Lamont, who said he intended to accept a plea deal that included a seven-year prison term. The juvenile court found that the parents had not complied with their case plans and that continued jurisdiction was necessary because returning H.B. to her parents would create a substantial risk of detriment to her well-being. The court, however, continued reunification services for Lamont and Terryan.

At the 12-month review hearing the court again found that Lamont and Terryan were noncompliant with their case plans and that returning H.B. would create a substantial risk of detriment to her well-being. The court terminated reunification services for both parents and set the case for a selection and implementation hearing under section 366.26.[4]

---

[4] The juvenile court also denied a petition by Terryan under section 388 seeking additional reunification services. We affirmed that order. (*In re H.B.* (Sept. 14, 2020, B305118) [nonpub. opn.].)

4

At the September 29, 2021 selection and implementation hearing the court found that Lamont and Terryan had not maintained regular and consistent visitation with H.B., that H.B. was adoptable, and that any benefit H.B. might receive from her relationship with her parents was outweighed by the physical and emotional benefit she would receive through the permanency and stability of adoption. After denying a petition by Lamont under section 388 asking the court to reinstate his reunification services and to vacate the hearing on terminating his parental rights under section 366.26, the court terminated Lamont's and Terryan's parental rights and designated Ms. L. as the prospective adoptive parent. Lamont timely appealed from the order terminating his parental rights.

B.       *Inquiry Under ICWA and Related California Law*

Lamont and Terryan completed Judicial Council form ICWA-020, Parental Notification of Indian Status, both checking the box next to the statement "I have no Indian ancestry as far as I know." Terryan reported on December 9, 2015 H.B. had no Indian ancestry. At the February 6, 2016 detention hearing the court confirmed that Lamont's ICWA-020 form indicated he had no known Indian ancestry. The court found there was "no reason to know that this child is an Indian Child as defined by the Indian Child Welfare Act." Nothing in the record suggests the Department or the court asked Lamont or inquired further about H.B.'s possible Indian ancestry.

During the Department's investigation into the allegations in the petition, the social worker contacted Lamont numerous times, but did not ask him about H.B.'s possible Indian ancestry. The social worker also spoke with H.B.'s paternal grandmother, two paternal cousins, and a paternal aunt, but did not ask any of them about H.B.'s possible Indian ancestry.

5

## DISCUSSION

Lamont contends that the Department did not conduct an adequate inquiry into the family's possible Indian ancestry and that the juvenile court failed to ensure the Department fulfilled its duty under ICWA and related California law. We agree with both contentions.[5]

### A. *Applicable law*

"ICWA and governing federal regulations (25 C.F.R. § 23.101 et seq. (2022)) set minimal procedural protections for state courts to follow before removing Indian children and placing them in foster care or adoptive homes" (*In re Rylei S.* (2022) 81 Cal.App.5th 309, 316), including asking "each participant in

---

[5] The Department argues we should dismiss Lamont's appeal because he failed "to identify the (ICWA) findings or orders he is challenging on appeal." This argument has no merit. Lamont appealed from the order terminating his parental rights. When the juvenile court made that order, the court necessarily found ICWA did not apply. (See *In re Isaiah W.* (2016) 1 Cal.5th 1, 11 [an order terminating parental rights is premised on a current finding ICWA does not apply].) Lamont's notice of appeal thus included an appeal from that finding. (See *In re Michael V.* (2016) 3 Cal.App.5th 225, 234 ["a parent who did not file a timely appeal from a juvenile court order that included a finding of ICWA's inapplicability may nonetheless challenge such a finding by appealing from a subsequent order terminating parental rights"]; see also *In re J.F.* (2019) 39 Cal.App.5th 70, 75 [reviewing court must liberally construe a notice of appeal ""'so as to protect the right of appeal if it is *reasonably clear* what appellant was trying to appeal from, and where the respondent could not possibly have been misled or prejudiced""'].)

an emergency or voluntary or involuntary child-custody proceeding whether the participant knows or has reason to know that the child is an Indian child." (*In re J.C.* (2022) 77 Cal.App.5th 70, 77, internal quotation marks omitted; see 25 C.F.R. § 23.107(a).) California law "'more broadly imposes on social services agencies and juvenile courts (but not parents) an affirmative and continuing duty to inquire whether a child in the dependency proceeding is or may be an Indian child.'" (*J.C.*, at p. 77, internal quotation marks omitted; see § 224.2, subd. (a); *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 741-742.)

"Section 224.2 creates three distinct duties regarding ICWA in dependency proceedings." (*In re J.C., supra*, 77 Cal.App.5th at p. 77, internal quotation marks omitted; see *In re H.V.* (2022) 75 Cal.App.5th 433, 437.) "First, section 224.2, subdivision (b), requires the child protective agency to ask 'the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled.'" (*J.C.,* at p. 77; see *H.V.*, at p. 437; Cal. Rules of Court, rule 5.481(a)(1).) Although this duty is "commonly referred to as the 'initial duty of inquiry,' it 'begins with the initial contact' (§ 224.2, subd. (a)) and continues throughout the dependency proceedings." (*J.C.,* at p. 77.) "Second, if the court or child protective agency 'has reason to believe that an Indian child is involved in a proceeding, but does not have sufficient information to determine that there is reason to know that the child is an Indian child,' the court and the Department 'shall make further inquiry regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.'" (*Id.* at

7

p. 78; see § 224.2, subd. (e); *H.V.*, at p. 437; Cal. Rules of Court, rule 5.481(a)(4).)  Third, if the further inquiry "'results in a reason to know the child is an Indian child, then the formal notice requirements of section 224.3 apply.'"  (*H.V.*, at p. 437; see 25 U.S.C. § 1912(a); § 224.3, subd. (a).)

"The juvenile court must determine whether . . . ICWA applies to the proceedings.  If the court makes a finding that proper and adequate further inquiry and due diligence as required in [section 224.2] have been conducted and there is no reason to know whether the child is an Indian child, the court may make a finding that [ICWA] does not apply to the proceedings, subject to reversal based on sufficiency of the evidence."  (*In re J.C.*, *supra*, 77 Cal.App.5th at p. 78, internal quotation marks and citation omitted; see § 224.2, subd. (i)(2); *In re D.S.* (2020) 46 Cal.App.5th 1041, 1050; Cal. Rules of Court, rule 5.481(b)(3).)  The court, however, may not "find that ICWA does not apply when the absence of evidence that a child is an Indian child results from a [child protective agency] inquiry that is not proper, adequate, or demonstrative of due diligence."  (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 408; see *In re L.S.* (2014) 230 Cal.App.4th 1183, 1198.)

> B.     *The Department Failed To Conduct an Adequate Inquiry into H.B.'s Possible Indian Ancestry*

The Department admittedly did not fulfill its duty to conduct an adequate inquiry into whether H.B. may be an Indian child because the Department did not ask any extended family members, some of whom were readily available, whether H.B. had any Indian ancestry.  (See 25 U.S.C. § 1903(2) ["'extended family member'" includes the child's "grandparent, aunt or uncle,

8

brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent"]; § 224.1, subd. (c) ["'extended family member'" is "defined as provided in Section 1903 of the federal Indian Child Welfare Act"].) In particular, there were various and obvious family members the Department did not ask about H.B.'s possible Indian ancestry, including Lamont, whom the Department interviewed on numerous occasions over the years, and H.B.'s paternal grandmother, whom the Department regularly contacted. (See *In re Y.W.* (2021) 70 Cal.App.5th 542, 553, fn. 10 [grandparent is an extended family member under ICWA]; *In re Michael A.* (2012) 209 Cal.App.4th 661, 665 [same].) A Department social worker also spoke to two of H.B.'s paternal cousins and an aunt, but did not ask any of them if there was Indian ancestry on Lamont's side of the family or how to contact other relatives to get relevant information.

The Department's failure to ask Lamont and his extended relatives about their possible Indian ancestry violated the express mandate of section 224.2, subdivision (b). (See *In re Antonio R.* (2022) 76 Cal.App.5th 421, 429 [section 224.2, subdivision (b), requires the child protective agency to interview extended family members who are readily accessible]; *In re H.V.*, *supra*, 75 Cal.App.5th at p. 438 [child protective agency's "first-step inquiry duty under ICWA and state law was broader [than interviewing only the mother], requiring it also to interview, among others, extended family members and others who had an interest in the child"]; *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742 [failure to ask the father's known relatives about possible Indian ancestry violated ICWA requirements under state law]; *In re S.R.* (2021) 64 Cal.App.5th 303, 314 [section 224.2

9

"obligates the court and child protective agencies to ask all relevant involved individuals . . . 'whether the child is, or may be, an Indian child'"]; *In re T.G.* (2020) 58 Cal.App.5th 275, 290 [the duty to inquire "begins with initial contact [citation] and obligates the juvenile court and child protective agencies to ask all relevant involved individuals whether the child may be an Indian child"].)

C.       *The Department's Failure To Inquire Was Not Harmless*

Citing *In re Rebecca R.* (2006) 143 Cal.App.4th 1426 and *In re A.C.* (2021) 65 Cal.App.5th 1060, the Department argues its failure to comply with its duty of inquiry under ICWA and California law was harmless because Lamont did not make an affirmative representation of Indian ancestry.  We and other courts have rejected this argument; a parent has no such obligation.  (See, e.g., *In re E.V.* (2022) 80 Cal.App.5th 691, 698 [a parent's "failure to make affirmative representation about possible Indian [ancestry] does not render the error harmless"]; *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 433 ["'It is unreasonable to require a parent to make an affirmative representation of Indian ancestry where the Department's failure to conduct an adequate inquiry deprived the parent of the very knowledge needed to make such a claim'"]; *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 743 ["[r]equiring a parent to prove that the missing information would have demonstrated 'reason to believe' would effectively impose a duty on that parent to search for evidence that the Legislature has imposed on only the agency"]; see also *In re A.R.* (2022) 77 Cal.App.5th 197, 207 ["it is the obligation of the government, not the parents in

10

individual cases, to ensure the tribes' interests are considered and protected"].) Indeed, "[i]f any party should be expected to provide this court with a meaningful offer of proof on the point, it is the child services agency that is statutorily required to conduct the inquiry at issue." (*A.R.*, at pp. 207-208.)

The Department also argues its failure to comply with ICWA and California law was harmless because Lamont checked a box on his ICWA-020 form indicating he has no known Indian ancestry. We and other courts have rejected this argument too. The inquiry obligations under section 224.2 presume that a parent's statements on the ICWA-020 form do not define the extent of the required inquiry and that the child protective agency's duty of inquiry is not limited by a parent's answers on the form. (See *In re J.C.*, *supra*, 77 Cal.App.5th at p. 81; *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 554.) Although Lamont filed an ICWA-020 form indicating he has no known Indian ancestry, "it is not uncommon for parents to mistakenly disclaim (or claim) Indian ancestry." (*J.C.*, at p. 81; see *In re M.E.* (2022) 79 Cal.App.5th 73, 83 ["parents may not always have . . . extensive biographical data, or even substantial information about their Indian ancestry"]; *In re S.R.*, *supra*, 64 Cal.App.5th at p. 314 ["the children's parents apparently had no idea of their family's connection to the . . . tribe . . . even though the children's great-grandmother was a member"].) Given the Legislature's express mandate to inquire about possible Indian ancestry, not only of the parents but also of extended family members, the information Lamont provided on his ICWA-020 form does not make the Department's breach of its duty to inquire harmless.

We and other courts have also rejected the related argument that the Department's failure to conduct an adequate

11

inquiry into H.B.'s possible Indian ancestry was harmless on the theory that any additional information from Lamont or his relatives was not "'likely to bear meaningfully upon whether [H.B.] is an Indian child'" because "'the evidence already uncovered in the initial inquiry was sufficient for a reliable determination.'" (See, e.g., *In re J.C.*, *supra*, 77 Cal.App.5th at p. 80; *In re Antonio R.*, *supra*, 76 Cal.App.5th at p. 435; *In re H.V.*, *supra*, 75 Cal.App.5th at p. 438 & fn. 4.) A child protective agency cannot rely on its failure to conduct an adequate investigation to argue its investigation discovered enough information to excuse its failure to conduct an adequate investigation. As the Department concedes, "juvenile courts and children's services agencies should comply with the federal and state ICWA statutes," and requiring them to do so "may give juvenile courts and the Department incentive to better comply with statutory mandates." Exactly. (See *In re A.R.*, *supra*, 77 Cal.App.5th at p. 207 [remanding "where no required ICWA inquiry has been conducted will prompt [the child protective agency] to conduct such an inquiry at its earliest opportunity to do so"].)

Nor, contrary to the Department's assertion, are our decisions in *In re J.C.*, *supra*, 77 Cal.App.5th 70, *In re Antonio R.*, *supra*, 76 Cal.App.5th 421, or *In re Y.W.*, *supra*, 70 Cal.App.5th 542 inconsistent with our decision 14 years ago in *In re H.B.* (2008) 161 Cal.App.4th 115. As we explained in *In re Rylei S.*, *supra*, 81 Cal.App.5th 309, in *In re H.B.* we found the child protective agency's error under ICWA was harmless under pre-2018 amendments to California law. (*Id.* at p. 324.) The law is different now, imposing on child protective agencies "far broader duties of inquiry." (*Id.* at p. 323.) And here the

Department did not make any inquiry of Lamont's extended family members, even though the Department had interviewed many of them.

Finally, the Department argues that requiring it "to strictly comply with section 224.2" would cause unnecessary delay and thus would be inconsistent with the goal of providing dependent children stability and permanency. The Department's argument, however, is inconsistent with another important purpose of ICWA and related California law: to protect the interests of the Indian tribes. (See *In re Benjamin M.*, *supra*, 70 Cal.App.5th at p. 745 ["it is in part the tribe's right to a determination of a child's Indian ancestry, but the tribe is not present, and the agency is charged with obtaining information to make that right meaningful"]; *In re S.R.*, *supra*, 64 Cal.App.5th at p. 314 [same]; see also *In re Isaiah W.* (2016) 1 Cal.5th 1,13 ["Indian tribes have interests protected by ICWA that are separate and distinct from the interests of parents of Indian children," and "ICWA's notice requirements are 'intended to protect the interests of Indian children and tribes despite the parents' inaction'"].)

D. *The Juvenile Court Did Not Satisfy Its Duty To Ensure the Department Made an Adequate Inquiry into H.B.'s Possible Indian Ancestry*

The juvenile court did not satisfy its duty to ensure the Department adequately investigated whether H.B. may be an Indian child. There is no indication in the record that, after the detention hearing, the juvenile court, at any time during this nearly six-year dependency case, considered whether the Department satisfied its duty of inquiry under ICWA and California law. The court did not ask the Department if the

13

social worker made the relevant inquiry when she spoke to H.B.'s paternal grandmother, H.B.'s aunt, or Lamont's cousins. Nor did the court ask the Department to describe the efforts it made to ascertain H.B.'s possible Indian ancestry; the record reflects that, other than obtaining the signed ICWA-020 forms, the Department made no such efforts. (See *In re Y.W.*, *supra*, 70 Cal.App.5th at p. 555 [juvenile court has a duty to ensure the Department complied with section 224.2, subdivision (b)]; *In re N.G.* (2018) 27 Cal.App.5th 474, 482 [juvenile court had a duty to ensure the child protective agency made the relevant inquiries, including asking a maternal uncle whether the child "may have maternal Indian ancestry" (italics omitted)]; see also *In re K.R.* (2018) 20 Cal.App.5th 701, 709 ["the court has a responsibility to ascertain that agency has conducted an adequate investigation and cannot simply sign off on the notices as legally adequate without doing so"].)

## DISPOSITION

The juvenile court's order terminating Lamont's parental rights to H.B. is conditionally affirmed. The juvenile court is directed to ensure the Department fully complies with the duty of inquiry, including interviewing Lamont and all of H.B.'s available extended family members, and with (if necessary) the relevant notice provisions of ICWA and related California law.

SEGAL, J.

We concur:

PERLUSS, P. J.

FEUER, J.

15